Filed 4/21/15  P. v. Herrera CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ALFREDO HERRERA,<br><br>        Defendant and Appellant. | C074425<br><br>(Super. Ct. No. 12F08504) |

A jury found defendant Jose Alfredo Herrera guilty of threatening to commit a crime that would result in death or great bodily injury (Pen. Code, § 422; count one; unless otherwise stated, statutory section references that follow are to the Penal Code), assault with a firearm (§ 245, subd. (a)(2); count two), possession of a firearm by a convicted felon (§ 29800, subd. (a)(1); count three), misdemeanor battery on the parent of his child (§ 243, subd. (e)(1); count four), and found that he personally used a firearm (§ 12022.5, subd. (a)(1)) in the commission of counts one and two.  The jury found

1

defendant not guilty of misdemeanor child abuse. (§ 273a, subd. (b).) Defendant was sentenced to prison for an aggregate 14 years eight months.

On appeal, defendant contends (1) the trial court violated his Fourteenth Amendment rights when it admitted evidence of prior acts of abuse to prove his propensity to commit the present offenses, and (2) he is entitled to one additional day of presentence credit; the People concede this latter point. We modify the judgment.

FACTS

*Prosecution Case-in-Chief*

Defendant met Ruby P. in 1994 when she was a freshman in high school. They are the parents of a son, Angel, born in 1996; and a daughter, Precious, born in 1999.

From 1994 to 2003, defendant abused Ruby by making accusations of infidelity, exhibiting "controlling" behavior, striking her, pushing her into walls, and punching her with his hands.

One night in July 2003 defendant came home drunk, demanded money from Ruby, and assaulted her when she refused. Defendant repeatedly struck Ruby's face using his fist, stabbed her arm using scissors and a pocketknife, and struck her head using a chain. The head injuries required stitches. Defendant later pleaded no contest to causing corporal injury to a cohabitant.

Defendant and Ruby separated for six years. After they reunited, defendant lived with Ruby and the children in Sacramento. But defendant was jealous and regularly accused Ruby of cheating on him.

Defendant suffered from diabetes. In 2010, a portion of one leg became infected and was amputated. Thereafter, defendant walked with a prosthetic leg. He is blind in one eye and partially blind in the other.

On December 26, 2012, defendant and a friend consumed alcohol at the family home. At defendant's request, Ruby drove the friend to his residence. After the friend

2

left the car, Ruby drove away and defendant began slapping her and calling her names. When they returned home they went to the bedroom where defendant hit Ruby, grabbed her arm, and threw her against a wall.

Precious heard the argument and called for Angel who tried unsuccessfully to force open the bedroom door. Precious looked through the doorway and saw defendant pulling Ruby's hair. Precious went to the living room and telephoned the police. She ended the call when defendant and Ruby emerged from the bedroom. By that time, defendant was arguing with Angel who, in turn, hit defendant in the face.

Defendant returned to the bedroom and then reemerged holding two guns. He went to the living room, threatened to shoot Angel, and aimed one gun at Angel's head. Ruby interceded and told defendant to shoot her instead of Angel.

Defendant pulled the trigger, but the gun did not fire; instead, a bullet fell from the gun to the floor. Defendant told Angel that he had gotten "lucky" and pulled the trigger again. Another bullet dropped to the floor. Defendant put down the gun and started throwing couch pillows at Ruby and Angel.

Sacramento County Sheriff's deputies arrived around this time. Deputy Michael Heller heard a male voice say, "I'm going to kill you." When the deputies knocked on the door, defendant got angry and said, "Don't open the door. Who called the cops?" He took the guns to the bedroom.

After the family concealed defendant's marijuana plants, Ruby opened the door and allowed the deputies to enter. She told them that defendant had guns. Defendant was handcuffed and taken to a patrol car. He had a knife in his right front pocket.

Ruby had no visible injuries. She directed the deputies to the bedroom closet where they recovered two firearms. One was an unloaded 20-gauge shotgun; the other was a .22-caliber semiautomatic rifle. A live round was "jammed" inside the rifle and could not be moved into position to be fired. The gun contained 14 additional rounds.

3

Another round of the same caliber was found on the floor near the living room. A criminalist later tested the rifle and found that it functioned normally.

A day or two after the incident, Ruby found another live round beneath the living room couch.

*Defense*

Dr. Edward Pagliere is a physician who treats county jail inmates. He determined that defendant was totally blind in one eye and legally blind in the other. When examined on December 27, 2012, defendant had mild swelling on his left cheek.

Defendant testified on his own behalf. He was diagnosed with diabetes more than 10 years before trial. His vision is impaired. He has obtained a recommendation for medical marijuana to treat glaucoma and chronic pain.

In 2003, defendant was convicted of domestic violence against Ruby. He spent time in jail and completed a year-long anger management course.

On December 26, 2012, defendant had been drinking whiskey and beer. After defendant's friend was taken home, defendant and Ruby argued in the car but he did not hit her. When they arrived home, defendant went to his bedroom. Defendant called Ruby to the room and when she entered she became upset. When defendant told Ruby he wanted to leave, they had a loud argument but it did not become physical. After Precious knocked on the bedroom door and she or Angel kicked the door, defendant opened it. Angel came in and started hitting defendant. When defendant tried to defend himself, Ruby grabbed his arm and someone ripped his shirt. Defendant slipped and fell. When he got off the ground he put on a sweater and sat at the dining table. Then the deputies arrived, asked him questions, and led him outside. Defendant did not threaten, hurt, or point a gun at anyone.

4

Defendant had the knife and guns "for protection." Ruby purchased the ammunition and was responsible for putting it away. Since his incarceration, Ruby has been attempting to obtain defendant's property through the family court.

DISCUSSION

I

*Evidence Code Section 1109*

Defendant contends the trial court violated his Fourteenth Amendment rights when it admitted overly prejudicial prior abuse evidence to prove his propensity to commit the charged crimes. He claims the evidence was inflammatory, created a probability of confusion, was overly remote, and lacked probative value. He argues that, if his trial counsel forfeited these claims by failing to assert them in the trial court, then counsel rendered ineffective assistance. We conclude counsel was not constitutionally ineffective.

1. *Factual and Procedural Background*

From 1994 to 2003, defendant abused Ruby by making accusations of infidelity, exhibiting "controlling" behavior, striking her, pushing her into walls, and punching her with his hands.

On July 25, 2003, defendant inflicted corporal injury upon Ruby that resulted in a traumatic condition. On April 7, 2004, defendant pleaded no contest to a felony violation of section 273.5, subdivision (a).

Prior to trial, the prosecutor filed a written motion seeking admission of the prior conviction--but not the years of abuse--pursuant to Evidence Code section 1109. During pretrial discussions, defense counsel agreed that the prior conviction could be admitted because the jury was "going to hear about it anyway." The trial court added: "I think they will on that [section] 1109, particularly because it's the same complaining witness.

5

Frankly, it comes in regardless of [section] 1109 as to her bias and her attitude.  [¶]  But we can make a more formal discussion of that before I make a final ruling after we--we get the jury, sometime before opening statements."  Defense counsel made no objection.

When the trial court later revisited the issue, defense counsel offered no argument or objection to the evidence.  The court found that the evidence was relevant and would not confuse the issues or consume an undue amount of time.

At trial, Ruby testified that defendant had abused her--by making accusations, exhibiting "controlling" behavior, striking her, pushing her into walls, and punching her with his hands--from 1994 to 2003.  Defense counsel did not object to this testimony.

The trial court instructed the jury that the prior acts evidence was "not sufficient by itself to prove that the defendant is guilty of the act [of] domestic violence charged here."  The prosecutor reminded the jurors that they were "not allowed as jurors to say, well, he did it in 2003 so he did it here.  It doesn't matter what else I heard, I'm voting guilty just based on that.  That's inappropriate."

### 2. *Forfeiture*

Defendant contends his prior acts of domestic violence should have been excluded pursuant to Evidence Code section 352 because the acts lacked probative value and were inflammatory, remote, and probably confusing to the jury.  He claims a portion of this contention is preserved for appeal because his trial counsel objected "to the introduction of the conviction itself and the underlying facts of the crime.  Thus the [Evidence Code section] 402 hearing."  Defendant claims the remainder of the contention must be considered under the rubric of ineffective assistance of counsel because "it makes no sense to object to only part of the evidence."  We consider these claims in turn.

"In the absence of a timely and specific objection on the ground sought to be urged on appeal, the trial court's rulings on admissibility of evidence will not be reviewed.  [Citations.]"  (*People v. Clark* (1992) 3 Cal.4th 41, 125-126.)  Although an

6

Evidence Code section 402 hearing on the prior conviction was held, defense counsel did not make a specific objection at or before that hearing on the ground now urged on appeal. Defendant's claim that "[t]here can be no forfeiture" with respect to the prior conviction has no merit.

This brings us to defendant's claim that his trial counsel was ineffective for having objected to only part of the evidence. The predicate of this claim--that counsel in fact objected to a portion of the evidence--fails for the reasons we have discussed.

In sum, defendant has forfeited his objections to the prior conviction and Ruby's trial testimony by failing to assert them in the trial court. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 199; *People v. Wilson* (2008) 44 Cal.4th 758, 790, fn. 6.)

### 3. *Ineffective Assistance of Counsel*

Defendant argues that the forfeitures constitute prejudicially ineffective assistance of counsel. We disagree.

" ' "[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.]' " (*People v. Avena* (1996) 13 Cal.4th 394, 418, footnote omitted (*Avena*).) " ' "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Citation.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

Defendant has not shown the requisite prejudice. The prosecution evidence on counts one (criminal threats) and two (assault with a firearm) was strong. Ruby, Angel, and Precious all testified that defendant made threats to Angel, pointed a loaded rifle at him, and pulled the trigger. The contrary evidence--defendant's testimony that he did not threaten, hurt, or point a gun at anyone--was undercut by his status as a convicted felon.

It is not reasonably probable that any juror who disbelieved the prosecution case on the counts involving Angel nevertheless found defendant guilty based on his prior conviction and history of assaultive behavior upon Ruby. (*Avena, supra,* 13 Cal.4th at p. 418.) Contrary to defendant's argument, the prior acts were less inflammatory than the present offenses. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 737-740.)

From 1994 to 2003, defendant abused Ruby by making accusations of infidelity, exhibiting "controlling" behavior, striking her, pushing her into walls, and punching her with his hands. On July 25, 2003, defendant inflicted corporal injury upon Ruby that resulted in a traumatic condition. In that incident, he repeatedly struck her face using his fist, stabbed her arm using scissors and a pocketknife, and struck her head using a chain. The head injuries required stitches.

But this longstanding abuse, commencing shortly after Ruby started high school, is not as horrific as the deadly and despicable behavior in the present case. But for the fortuitous and apparently unexpected misfiring (twice) of the .22-caliber rifle aimed at Angel's head, this could or would have been a homicide case based upon a father killing his natural son.

Moreover, the history of assaultive behavior was conveyed to the jury by just one of the three witnesses--Ruby--who described the present assault. It is not reasonably probable that any juror who disbelieved Ruby and the children with respect to the acts they all had witnessed, nevertheless believed Ruby with respect to the prior acts she alone had described. We find no reasonable probability that any juror believed defendant not

8

guilty of the present crimes but nevertheless sought to punish him for "assaulting a 14 year old bride."

Defendant relies on his surrounding circumstances--his blindness from diabetes, intoxication from alcohol and marijuana, and claimed disorientation and provocation from Angel's offensive blows. But none of those conditions prevented defendant from sagely assessing the gun's first failure: he told Angel, "[y]ou got lucky this [last] time, but you're not so lucky this time," and he again pulled the trigger. Defendant's claim that the prior abuse was more inflammatory than the present crimes has no merit.

Count four alleged misdemeanor battery on Ruby, the parent of defendant's child. Defendant does not claim the evidence of prior acts involving Ruby was especially prejudicial as to the present count involving her. We need not separately consider that issue.

## II

### *One Additional Day of Presentence Credit*

Defendant was awarded 212 days' custody credit and 31 days' conduct credit. He contends, and the People concede, he is entitled to one additional day of custody credit. Defendant was arrested on December 26, 2012, and remained in custody until sentencing on July 26, 2013, a period of 213 days. Under the formula of section 2933.1, the extra day of custody credit does not entitle him to additional conduct credit. We modify the judgment accordingly.

DISPOSITION

The judgment is modified to award defendant 213 days' custody credit and 31 days' conduct credit. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

                                                    HULL            , J.


We concur:


      BLEASE           , Acting P. J.


      BUTZ            , J.

10